**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Engleka,<br><br>    Plaintiff,<br><br>v.<br><br>Boston Scientific Corporation,<br><br>    Defendant. | No. CV-20-00925-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant's Case-Specific Motion to exclude Expert Testimony of Dr. Bruce Rosenzweig. (Doc. 68.) The motion is fully briefed and for the reasons set forth herein is granted in part and denied in part.[1]

Expert testimony admissibility at trial is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. The rule and cases interpreting it provide that expert testimony must be useful to the tier of fact, the expert must be qualified, and the evidence must be reliable or trustworthy. *In re ConAgra Foods, Inc*., 302 F.R.D. 537, 548-49 (C.D. Cal. 2014).

Plaintiff's response sets forth the opinions she intends to illicit from Dr. Bruce Rosenzweig at trial. (Doc. 95.) Plaintiff expects Dr. Rosenzweig will offer three opinions on testing of the subject explanted meshes: (1) that Defendant should have conducted

---

[1] Oral argument is denied because the issues are adequately briefed and oral argument will not assist the Court in reaching its decision.

testing to determine if mesh would degrade in the body; (2) that Defendant did not undertake long term testing to determine if warnings in the MSDS were associated with long term consequences of use of mesh; and (3) that Defendant should have conducted clinical trials prior to marketing its products. (*Id.* at 4.) Plaintiff also indicates that Dr. Rosenzweig will offer opinions on causation, specifically that Plaintiff's urinary urgency, bowel dysfunction and constipation worsened as a result of the mesh implants. (*Id.* at 6-8.)

### I.   Dr. Rosenzweig's Qualifications to Offer Opinions on Testing

Defendant argues that "Dr. Rosenzweig has no specialized training or education that qualifies him to offer opinions on the testing of mesh products." (Doc. 68 at 5.) Rule 702 states that an expert may be qualified by "knowledge, skill, experience, training or education." Dr. Rosenzweig is well-qualified by education, training, and experience to render the opinions described in Plaintiff's Response.

Dr. Rosenzweig's education and training are described in his report. Rosenzweig is a medical doctor. He obtained his MD degree in 1984 from the University of Michigan in Ann Arbor, Michigan. Following graduation from medical school, he completed an Obstetrics and Gynecology Residency at Michael Reese Hospital in Chicago. In 1988, he attended a one-year pelvic surgery fellowship at State University of New York in Syracuse, New York. Following that fellowship, he attended a two-year Urogynecology and Urodynamics fellowship at UCLA Harbor General Hospital in Torrance, California. After graduating from the Urogynecology fellowship, he became a faculty member at the University of Illinois in Chicago. He started a Urogynecology program at the University of Illinois and also was the residency program director. In 1998, he went into private practice, and subsequently established a private practice at Rush University Medical Center. He worked at John H. Stroger Hospital in Chicago from May 2003 until November 2010 and Weiss Memorial Hospital as Associate Chair of Gynecology from February 2011 until July 2012. He has published numerous articles and given numerous lectures on the topics of pelvic organ prolapse, urinary incontinence and repair of pelvic organ prolapse.

He was invited by Ethicon and attended its Gynecare Prolift Training Seminar and TVT Obturator Seminar in Belgium and to a Bard Avaulta training seminar. He is an Assistant Professor of Obstetrics and Gynecology at Rush University Medical Center in Chicago, Illinois. (Doc. 68-1 at 18.)

Dr. Rosenzweig's relevant experience is set forth Plaintiff's Response. Plaintiff's description of Dr. Rosenzweig's experience is unchallenged. Plaintiff states:

> Dr. Rosenzweig [was] involved in the development of said amnio-infusion catheter, [and] he helped to develop a randomized controlled trial ("RCT") to test infusion into the uterus; worked on testing the Innova electrical simulator designed to treat stress urinary incontinence ("SUI"); and he helped design an RCT using a sham similar as compared to an active simulator; he was an investigator for a study involving cervical cap contraceptives, which was designed to choose the appropriate size to avoid pregnancy while also gaining FDA approval as over-the-counter drugs. As a result, Dr. Rosenzweig has substantial experience with testing genitourinary and pelvic medical devices.
>
> . . .
>
> he has "used numerous synthetic pelvic mesh products [in the past], including Ethicon's TVT Classic, TVT Obturator, and Prolift." (Doc. 68-1, Ex. C – Rosenzweig Wave 4 General Report, at 4). Moreover, Dr. Rosenzweig has "performed over 350 surgeries dealing with complications related to synthetic mesh, *including the removal of Advantage Mesh slings* and Polyform mesh prolapse devices." *Id.* (emphasis added). In short, Dr. Rosenzweig has indeed implanted polypropylene mesh slings and has performed surgery to remove Boston Scientific mesh products.

(Doc. 95 at 3-4.)

Dr. Rosenzweig's education, training, and experience with synthetic mesh products, having performed over 350 surgeries dealing with complications related to synthetic mesh, qualify him to opine that Defendant "should have conducted testing to determine if mesh would degrade in the body" and "should have conducted clinical trials prior to marketing its products." (Doc. 95 at 4.) Those opinions also will help the trier of fact understand the evidence or to determine a fact in issue. Rule 702 does not require that an expert be the most qualified in the field, just that he has the education, training, and experience to assist the jury to understand the evidence or a fact in issue. *See United States v. Smith*, 520 F.3d

1097, 1105 (9th Cir. 2008); *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir.1993). As a medical doctor treating patients and working directly with these and similar products, and having had experience dealing with complications caused by those products, Dr. Rosenzweig is qualified to opine that Defendant should have conducted clinically relevant testing to determine if naturally occurring conditions in the vagina could cause polypropylene to degrade. He need not be an expert on the tests or the testing protocols to offer those opinions. He is qualified because of his education, training, and experience with the polypropylene degradation in the body creating medical complications, and his opinions concerning the need for testing are relevant and sufficiently reliable and trustworthy.

The second opinion Plaintiff indicates she will elicit form Dr. Rosenzweig, that Defendant "did not undertake long term testing to determine if warnings in the MSDS were associated with long term consequences of use of mesh;" is not an opinion, it is a factual representation. Dr. Rosenzweig is an expert witness, not a fact witness. This topic therefore is not appropriate testimony for an expert witness. Because Plaintiff has not argued that this fact is the foundation for a relevant opinion and has not asserted that Dr. Rosenzweig has personal knowledge of that fact, the Court will grant Defendant's motion to exclude the Dr. Rosenzweig's testimony regarding that fact.

**II.     Dr. Rosenzweig's Methodology in Reaching his Causation Opinions**

As to Dr. Rosenzweig's opinions concerning the cause of Plaintiff's claimed permanent injuries of urinary urgency, bowl dysfunction, and constipation, Defendant argues: "Dr. Rosenzweig has consistently attributed these conditions entirely to [Defendant's] products, notwithstanding that both conditions pre-dated implantation of any [of Defendant's] products—a fact that he knew or should have known at the time of drafting his initial report but failed to acknowledge until recently." (Doc. 68 at 6.) Defendant complains that because Dr. Rosenzweig authored a supplemental report and testified in deposition that the implants were not the sole cause but aggravated a pre-existing condition, he must have employed an unreliable methodology.

Plaintiff points out that Dr. Rosenzweig's supplemental opinions consider and factor in the pre-existing conditions: "Dr. Rosenzweig concedes that these pre-existing conditions of urinary urgency and bowel dysfunction and constipation may be contributing to her current symptoms." (Doc. 95 at 6.) Dr. Rosenzweig undoubtedly has the education, training, and experience to render these opinions.

Dr. Rosenzweig's original opinion that the implants were probably the sole cause of Plaintiff's conditions is consistent with the opinions set forth in his supplemental report and his deposition testimony. Although his supplemental opinions no longer claim that the implants are sole cause the problems, his supplemental opinion that the implants probably made the conditions worse is consistent. Both his original and his supplemental opinion are that the implants caused her permanent harm. That Dr. Rosenzweig's original opinions did not factor in Plaintiff's pre-existing conditions does not indicate that his methodology is not reliable. His supplemental opinions factor in the area of concerns raised by Defendant's and address them directly. An expert may amend his opinions to consider facts not previously considered without necessarily rendering his methodology unreliable. Any inconsistencies between the original and supplement opinions go to weight, not admissibility.

**IT IS ORDERED** that Defendant's Case-Specific Motion to exclude Expert Testimony of Dr. Bruce Rosenzweig (Doc. 68) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Dated this 1st day of October, 2021.

Douglas L. Rayes
United States District Judge